Case No. 22-7126, Allan Philipp et al. Appellants v. Stiftung Preussischer Kulturbesitz Mr. O'Donnell for the appellants, Mr. Freiman for the appellee Good morning Mr. O'Donnell, you may proceed when you're ready Good morning Your Honor, and may it please the Court Nicholas O'Donnell for the appellants, Allan Philipp, Carol Stiebel, and Jed Lieber To understand the two questions posed by the Supreme Court on remand, it is essential to understand the role that the nationality of the victims has always played in this case This case was brought in 2015 alleging a classical expropriation of the property If you look at paragraph 23 of the first complaint, which is the Joint Appendix at page 21, at 19 and 20, it's very clear that the allegations were framed in terms of a classical expropriation This is not a case that took a turn because of Simon 1 The allegations are that the velvet and shrouds, the property issued in this case, but that taking was discriminatory because the victims were Jewish That it was not for a valid public purpose, it was part of the Nazi's larger theft of art, and that there was not fair and adequate consideration paid at the time This appears verbatim in the first amending complaint at paragraph 25, Joint Appendix 177, and the second amending complaint, paragraph 25, Joint Appendix 908 Those allegations set out the elements that even the Prussian Foundation would have to concede address what international law prescribed These allegations, as I said, did not change because of Simon, they were not an adaptation because of an intervening case Even if you looked at Simon 1 as an outlier, which it was not at the time It is extremely detailed, the allegations are extremely detailed about the role that being a German, or not being a German by virtue of being a Jew, in so many words, played in why this transaction fits those elements So JA 908? 908, Your Honor, I believe is the second amending complaint Yeah, paragraph At 25, the second amending complaint is verbatim paragraph 23 from the first complaint If I've given you the wrong JA site, I apologize Yeah, I think it's on 903 903, I'm sorry Paragraph? Paragraph 25 of the operative complaint before you, the second amending complaint And that's the same as first amendment, amended complaint, paragraph 25, and original complaint, paragraph 23 And when you compare them, they are verbatim the same And this case, in 2015, in vote section 1605A3 The jurisdictional theory of this case has never changed It is that this taking, that this transaction cannot be defended because of who the parties were And I say nothing else today It is that the motivating philosophy of the taking state and the expropriating state is to divide the universe into Germans and non-Germans And I think Mr. Zell said this eloquently at the end If you were to ask what the view of the expropriating state was in 1935 as to whether these three men were German nationals, the question answers itself Of course Germany did not, Germany could not have been more emphatic that this group of people was constitutionally ineligible Why is that the issue? Because that is how you determine what the nationality of the parties is your own What about the corporations? These individuals did not own anything and their heirs didn't own anything except interest in a corporation The three corporations were German corporations That sold the artwork in 1935 That is correct, John We disagree with the Prussian Foundation of course as to whether the association had separate existence But going to your question about the art dealer firms, that simply puts them in the same place as the plaintiffs in Helmholtz on the remand The American shareholders whose Venezuelan corporation was taken The Venezuelan corporation had no grievance under international law this court held But the American shareholders did And in this case what you have at the time of the taking is you have two shareholders who must be considered Dutch because they had left And again this goes to the standard of nationality of the men involved I have to interrupt you, what you just said is not accurate according to the Supreme Court Let me read to you Since two of the consortium members fled the country following the sale With all due respect to the opinion of the Supreme Court, Your Honor, not what the allegations of the complaint say and what the allegations of the complaint have always said So Chief Justice Roberts was wrong I guess in that respect, yes, Your Honor Just as to the record of the case The record of the case, it's not disputed, has never changed as to the sequence Because it says by 1935 they had emigrated It says by, but the sale was in June Right, and 1935 began in January So by 1935, without any more specific reference, is by the time 1935 began But your entire theory also depends on the ability of stateless individuals to assert expropriation claim Not entirely, Your Honor, because I think under the proper perspective Rosenberg and Rosenbaum must be considered Dutch nationals at the time of the taking Which would place that into the context of what everybody I think agrees Putting aside the corporate question that Judge Randolph addressed Is a classical expropriation, taking by a state of a foreign alien's property But even as to the statelessness question, Your Honor, yes, we agree certainly with assignment plaintiffs And I think the way to look at that is There is this small space, right, between the secondary statement and the FSIA There has to be, because as Mr. Zell pointed out, there is no analog in customary international law For the expropriation, except I want to get back to the question I asked you earlier The allegations, I'm looking at your second amended complaint And just, you know, there are a number of paragraphs But just take paragraph 32 On information and belief, the consortium was solely entitled to ownership rights In the period October 1929 to June 14, 1935 When the artwork had been in their possession So the consortium sold it And then according to the Supreme Court, the two individuals you're talking about Moved to the Netherlands, right So the taking, when the taking occurred, they were not Dutch citizens And if that's essential, I don't find it If it's essential that they be considered Dutch citizens Show me in your complaint where you'd make that allegation It's not essential, Your Honor Well, as I said earlier, we made the allegation that by 1935 they had emigrated So I understand what the opinion in Phillips says But as to what the record is, which is the question The allegations are as they've always been But it is not essential because stateless victims can bring these claims They can espouse these claims, and that is for a couple of reasons One is the comment D to section 175, which Mr. Zell alluded to Is that in that instance, the stateless alien can espouse the claim And the other, as I said, in response to your question, Judge Pillard Is there is, there has to be by definition The very, at least slightest bit of space between the second restatement And the expropriation exception because there is no analog at international law And as the Supreme Court has said repeatedly It is a departure but not a radical departure But it has to, that 1605A3 is a departure from international law But it should not be considered a radical departure Justice Thomas quoted that at me in oral argument It is in various expropriation decisions by the Supreme Court since the 80s But the departure has to include something greater than zero Otherwise the expropriation exception in that instance would have no, it would be nothing left Well, it's about the immunity, it pierces the immunity I'm not sure how you're relying on comment D The last clause of which is a stateless alien is without a remedy Since there is no state withstanding to espouse this claim And there you're relying on the notion that the Foreign Sovereign Immunities Act creates Well, section D ends, unless I'm reading the wrong paragraph Under the rule stated in this section, a stateless alien may himself assert the responsibility of a state in those situations Where an alien who is a national of another state may do so And the next sentence is, however, in those situations not covered by the rules stated in this section Or by an international agreement providing some other remedy A stateless alien is without a remedy But the FSIA is that remedy Since there is no state withstanding to espouse this claim And it's somewhat circular, whether the FSIA is referring to property taken in violation of international law And then you're saying, well, violation of international law need not be separately provided For example, as described in the second statement Or described in other sources of customer international law Because the statute itself accomplishes that codification That goes back to the fact of the FSIA and some of your questions earlier today, Your Honor Which is that the FSIA does provide that remedy The FSIA does a lot of different things And the day before the FSIA was enacted An alien in that circumstance would have had no remedy anywhere So you are relying on the distinction between right and remedy that I alluded to at the beginning Yes, yes With that, I have about a minute left So I will reserve the balance of my time if there are no other questions Thank you Morning, Mr. Freiman Good morning, Your Honor May it please the Court, Jonathan Freiman for SBK Your Honor, I do want to address some of the jurisdictional merits questions Which, of course, have consumed the bulk of this Court's questions and answers this morning But I'm going to start by being a little more boring And I'm going to turn to the law of forfeiture And in particular to the fact that the district court here Found that the arguments that Mr. O'Donnell has been presenting have been forfeited And this Court's review of the district court forfeiture decision is under the abusive discretion standard And there's a reason for that, of course The district court is uniquely positioned to know what has been argued And to take the time to look through the record in some detail The GSS group decision is the one that makes clear that it's an abusive discretion standard And as Judge Collar-Catelli found, none of this was argued below Now, this is not a question of, can you find a paragraph in the complaint that might support a legal theory The question is, did they argue the legal theory at any previous time in this case before it got to the Supreme Court And the answer to that question is no, as Judge Collar-Catelli set out in very clear detail in her decision All along, they chose a path They had a jurisdictional theory Their theory was that the expropriation exception allowed claims for property taken in violation of the International Law of Genocide That was their theory But we all know that there was a long-standing consensus, as Judge Breyer put it, in the Altman case And as the Supreme Court put it in this case, that the domestic taking rule existed And therefore, they always had another path They always could have said from the beginning, no, we don't fall within the domestic takings rule Because we are not nationals of Germany None of the companies were nationals of Germany Or whatever their theory, none of the individuals who owned the companies And you can ignore the company's corporate status Whatever their theory would have been None of that is argued You won't find any of that in any of their briefs to the district court You won't find any of it in their briefs to this court the last time around It's first brought up in a single paragraph in response to our assertion that it was waived in their Supreme Court merits brief What about the allegations of the complaint? And what about the fact that you have consistently been arguing against that position? It doesn't seem like in those circumstances that there's any notice problem Which is really what this whole doctrine goes to The preservation, it's a discretionary doctrine You've been alert to this issue all along Nothing about the sequence of the decision It obviously keeps you within litigation for longer than you'd like But these are complicated questions These are complicated questions, Your Honor I don't think this court needs to address them Because I don't think the forfeiture law of this circuit requires there to be some sort of particularized prejudice But there is prejudice here And I know Your Honor had some doubts about this in the last argument But there is prejudice of multiple forms And I'd like to go through them for you First of all, I do want to reiterate the notion of the fact that I'm, of course, representing a foreign sovereign The very purpose of the Foreign Sovereign Immunity Act is immunity from suit And in the Supreme Court's decision in Helmuth, the Supreme Court makes clear No, we're not going to adopt this non-frivolous standard Because that's going to drag the litigation out That's going to make the litigation keep going Well, forfeiture is even worse If we're going to excuse forfeiture in this circumstance We're saying the plaintiff can bring one theory Bring it all the way up to the Supreme Court Go all the way back down and then just start with another theory Who goes all the way up to the Supreme Court? We do because, in fact, that's part of the notion of the Foreign Sovereign Immunity Act Exactly. I'm just saying that, you know, it's a little rich Given that it is the prerogative of a nation state to appeal whenever sovereign immunity is denied That the appeals that are repeatedly triggered by the nation state are then adverted to as a source of delay And I just, you know, I think this is a tough question Where there are multiple legal grounds And, you know, where you want to have them tested all the way to the highest court And that's absolutely a prerogative But, you know, there's a tension between resolving things efficiently And giving the sovereign immediate rights to appeal And you recognize that I support what Your Honor is saying But respectfully, if we had not appealed We would have been moving to discovery We would have been moving to factual discovery Because the district court, in fact, found that there was jurisdiction Under a theory that proved to be wrong That the Supreme Court rejected And you might have prevailed on facts We might have, but the point of the Foreign Sovereign Immunity Act Is immunity from suit, not immunity from liability I understand, I understand I just think it's very difficult to get you everything that you want Fully reviewed accuracy and have the case decided yesterday Let me make, we're not hesitant for yesterday, Your Honor But let me make clear, I think it's important to get into the details A little bit of the procedural sequence here Again, this is why we have an abuse of discretion standard But there was an original complaint We moved to dismiss One of the things we moved to dismiss that original complaint Was on the basis of the domestic takings rule They amended their first amended complaint with our permission They amended and they didn't address it They didn't raise, they didn't say we're Dutch or we're stateless They did say we were persecuted But they didn't say we're Dutch or we're stateless Or companies don't count That wasn't in their amended complaint And then we moved to dismiss again We moved to dismiss the first amended complaint And in their opposition, they didn't say Oh, well, we're Dutch or we're stateless Or companies don't count They didn't make any of those arguments there What do you win if you prevail on the forefisher argument? If the district court was correct that these arguments were forfeited Then the case is over That case is over But the adjudication would have been on the basis That these people were German citizens or nationals Which would not prevent them from bringing another suit Claiming that they were Dutch Well, Your Honor, I'm here on this suit And I believe in this suit it was forfeited As to what they choose to do in the future That would be up to them It would preclude them, wouldn't it? That's claim preclusion And it includes arguments Whether you've raised them or not That arise out of the common nucleus of operative facts I think that would be res judicata And we're not called on to decide that It might well be res judicata It might be statute of limitations issues I don't know, Your Honor But that would be a decision for plaintiffs to make And arguments to be had in a further case If that's something they decided to do Let me turn to the minute Well, actually, let me just mention one other element Very quickly of prejudice here One of the grounds we moved to dismiss our original case Formed convenience And, of course, we didn't have the advantage at the time Of knowing that they were going to claim to be Dutch nationals Of knowing that Dutch nationality law might come into play Or that they weren't German nationals And that we would need to show that, in fact The German law of nationality was relevant In addition to whatever other German bodies of law were relevant Well, if we've been able to raise that At the forum non-convenience argument stage That might have tipped the scales for the district court And that decision, of course, also would have been Under the use of the discretion standard So that's another kind of prejudice that was suffered here By them not raising that argument Again, we think the argument was forfeited But I do, in the time that's left, want to address the merits My friend, as you pointed out The companies are the ones who were the members Of the consortium And I just want to point out This is unequivocal in the operative complaints here Paragraph 1, the very first paragraph of the complaint Which you can find on page 896 of the joint appendix In talking about the Delfinschatz owners says Those owners were a consortium Of three art dealer firms in Frankfurt It's their allegation It's clear that German companies Three German companies were the members of the consortium That owned the property that was allegedly taken Likewise, you can turn to paragraph 32 of the complaint Which one of you asked about earlier That's on page 911 of the joint appendix And here again it says Only these three art dealer firms And then it names them Were the signatories to the contracts of 1929 That's when the Delfinschatz was bought And 1935, that's when it was sold So the plaintiffs themselves have admitted That this property was owned by corporate entities In Germany, in Frankfurt They have never argued that these companies Were not German, nor could they These were companies that were on the commercial register In Frankfurt, as they themselves have acknowledged And there is no doubt that under international law The corporate reality has to be recognized This court holds that in Helmreich And it's a long-standing customary international law principle It goes back to the Barcelona detraction case Which is cited in this court's decision in Helmreich As well as in the United States' biggest case in Helmreich So it's very clear I tried to go to your earlier questions That yes, you do have to care That companies owned this, that this was not individuals Could you turn to, while we're on the appendix I think it's 1019, 18 and 19 I'm sorry, your honor, I missed that 1018 1018 Your honor, that appears to be If it's 1018 of the joint appendix I see a 1018 and 1019 Yes, I see a list in German on page 1018 Prussian stamp tax on the right Yes, I do see Is it there? Okay Yes On the left, is that the bill of sale? It's in German Your honor, this is This is, I believe, a list of the items It's part of the 1935 contract Which begins on page 1011 Right, and it's dated Berlin June 14, 1935 Which was the date of the sale That's correct, your honor Okay, now, look at the next page And it's a Prussian stamp tax Apparently imposed on the sale And down the bottom Well, down in the bottom This is the translation It gives the date, June 14, 1935 Expected, right? You see that? Expected, illegible, on June 14 Okay, then Look at the third entry It's Mr. Rosenbaum And Mr. Rosenberg And their address is Amsterdam Yes, your honor Am I to infer from that That they were living in Amsterdam At the time of the sale? They may have been, your honor I don't remember the complaint As Mr. O'Donnell's, correct? It states that they had emigrated To the Netherlands sometime Between 1933 and 1935 But it's not clear when But let me go to it The reason I'm asking you Is because undertaking law That, particularly as the Supreme Court Interpreted here The question is what the nationality was At the time of the sale That's correct So if they were not in Amsterdam At the time of the sale Then the nationality clearly Seems to me, is German Whether by the individuals Or the corporations, either way But if they were in Amsterdam At the time of the sale It might be a different matter Particularly since if you go further In the appendix Page 1020 Can you turn to that? Yes, your honor They're listed as former owners Of the company Yes, your honor So let me say two things And there's another entry I've forgotten where it is That indicates that by By September of 1935 Their company was defunct Well, there are In fact, the complaint states The company continued operations In Frankfurt until 1937 With one of their brothers Running the operations in Frankfurt I think you're right Yeah, I have to correct myself I think it was a 1941 entry That said it was defunct I believe that they allege That the company continued operations Until 1937 And that it was removed From the commercial register In 1938 That is that the company Became defunct in 1938 Our expert on German law Notes that this is a company In Weinstown And that these two individuals Are acting for the company In Weinstown And they're, of course Collecting the assets Before they're distributed To the owners of the company But it's still a company And that's why it's listed As three That is, they're not Separately listed as three and four It's a single unit But going to So it's still a company And Barcelona Traction And this court's decision On Helmreich are still relevant But let me go to the deeper question That your honor asked Which is What if we ignore Corporate nationality Were these two men Dutch nationals At the time of the alleged Taking over the property And the answer to that Is unequivocally no Under the international law Of nationality You look to each state's Nationality law And there is nothing In the record the plaintiffs Have put forward Suggesting That these two individuals Were no longer German nationals In June of 1935 Or that they were Dutch nationals In fact The only materials that this court Has in the appellate record Are the laws The relevant laws As well as expert analysis Of the laws Of both the Netherlands And of Germany And under German law Professor Jan Thiessen Points out that These people clearly Were nationals of Germany The mere fact of Leaving Germany Even if you did not Intend to return Did not mean that you lost Your German nationality Under German law By the same consequence Professor Kampfens With regard to  And she attaches All of that law Which was available To the district court Under Dutch nationality law It was simply Not legally possible To become a national Within two years Under Dutch nationality law It was a minimum period of time Of five years Before you could even apply For nationality Right, someone doesn't Become a national Just because they Go there Even if they intend to live there You don't become a national In the United States Because you come here On a work permit Or a tourist visa Or you come here As an documented person You become a U.S. national If in fact you Apply for and receive Either legal permanent residency Or citizenship In the United States Same in the Netherlands In the Netherlands You needed to wait Five years to even apply Well five years Even taking them At their They've left themselves A two year window If we take the beginning Of that window In 1933 They couldn't have become Dutch nationals Until at the earliest 1938 So we're talking about Years after the sale In issue here And again Returning to German nationality law It's clear that they were German nationals In June of 1935 And they put forward nothing Their argument simply is Ignore that They say ignore What the actual laws Of Germany And the actual laws Of the Netherlands Are And instead Just look at the totality Of the circumstances You decide in the abstract What constitutes nationality You decide if country And person Have enough of a link And I want to I want to put out The point now That they have nothing To support this There's no source A steep climb I believe Judge Pillard You referred to earlier It's a steep climb To find a principle Of established Customary International law Which is of course Based on the practice Of nations Other nations Based on a Felt sense of Legal obligation Well it's a steep Climb Indeed And they pointed to Nothing that suggests That someone loses The nationality Of their birth Because of Mistreatment Or because of Some totality Of circumstances Analysis They don't Sign a single case There's no International law On that whatsoever What they're trying To do Is the same problem That happened In the earlier Assignment decision Trying to put A square peg In a round hole Is there any De facto statelessness By virtue of The persecution There's not Your honor There's no Establishment As a matter of fact If you look at There was reference Earlier to section 175 Of the second Restatement And that's not That was not Raised by plaintiffs In this case As I noted They forfeited The whole thing But they didn't Even raise that So I'm paraphrasing But the reporter Says wow You know the law Of statelessness Is really not clear And that's why We're trying to Develop international Conventions to deal With it And they reference Something called The Harvard draft Which is a convention That I believe Never entered Into force But the Desire I understand The desire Is to apply Human rights Principles to The notion of Nationality Because of Stateless people You know Not having any Kind of Protection But as the Supreme court Held in Philip We look to The relevant Body of law Human rights Law exists On its own Nationality Law is Separate from That and Speaking to Judge Pillard's Point earlier Judge Childs The international Law of expropriation Is the relevant Body of law That we look To in Claims under The Disciplinary Act And Then with Respect to The Forfeiture Issue Does it Matter Being in The Status Of an Appellee With respect To the Argument No Because They're The plaintiff Below so We're Looking at What happened In the District And They Could Have Tried To Argue Around These Issues They Didn't That Argument Was Never Made So That's Always The Case For A Plaintiff To Respond To The Arguments And     Then With Respect To The Forfeiture Issue Is it Preferable To Rest On The International Law Supporting The Notion That Individuals Become Stateless By Virtue Of  The  Law Of Expropriation Right What Philip Obviously The Central Animated Principles Of Philip Describing The International Law Of Expropriation Talks About The Traditions Of International Law Not Between States And Individual Persons Human Rights Later Emerged To Deal With The Problems Of The States But With Regards To The Traditional Law Of Taking That Only Involves Relations Between States So There's No Harm To A State That Occurs When A Stateless Person's Property Is Taken And I Guess One Way To Make That Very Clear Is If We Imagine That A State Takes The Property Of A Person From Another State It's That Other State That Traditionally Has The Claim That Can Espouse That Claim And That State Can     Be Taken           That State Can Be Taken From Another State And That State Can Be Taken From Another State        Another State And That State Can Be Taken From Another State And That State
judges: Pillard, Childs, Randolph